IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THE INTERCEPT MEDIA, INC.
and SAM BIDDLE,

              Plaintiffs,

           v.

U.S. DEPARTMENT OF DEFENSE,

              Defendant.

**COMPLAINT**

Case No. 1:26-cv-3227

Plaintiffs The Intercept Media, Inc. d/b/a *The Intercept* and journalist Sam Biddle, an employee and agent acting on behalf of *The Intercept*, bring this suit against Defendant U.S. Department of Defense ("DoD" or "the Department") and allege as follows:

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.

2.      Through two FOIA requests, Plaintiffs seek copies of the contracts under which DoD spends hundreds of millions of dollars in taxpayer funds to deploy artificial intelligence ("AI") systems in its operations.  Specifically, Plaintiffs requested the Other Transaction Agreements between DoD's Chief Digital and Artificial Intelligence Office ("CDAO") and four leading AI companies—OpenAI, Google, Anthropic, and xAI—as well as any other contracts or agreements authorizing the deployment of so-called "frontier" AI models on DoD networks.

3.      The sometimes-close, sometimes-contentious relationship between these four companies and the federal government is a matter of intense public concern.  In February 2026, the White House and the Pentagon directed all federal agencies to stop using the AI technology

of one of these four companies, Anthropic, and instead designated Anthropic a supply chain risk. This unprecedented designation arose from disagreements over Anthropic's "red lines" – *i.e.*, Anthropic's policies restraining the government from using its technology for domestic surveillance and autonomous weapons systems.  Yet around the same time, DoD executed new deployment agreements with OpenAI and xAI, even though OpenAI claimed to have adopted essentially the same "red lines" as Anthropic.  Anthropic has since sued DoD in federal court and obtained a preliminary injunction, on both constitutional and statutory grounds, blocking DoD from implementing the White House blacklist order or Pentagon supply chain risk designation.

4.      Plaintiffs thus sought these records to better understand the relationships between DoD and these AI companies.  Specifically, these records may reveal how the companies' policy positions — and DoD officials' personal and business relationships with company executives — influenced the Department's procurement decisions.

5.      DoD has failed to comply with its obligations under FOIA.  FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify a requester of the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions.  *See* 5 U.S.C. § 552(a)(6)(A)(i).  Over thirty working days have passed since Plaintiffs submitted their FOIA requests.  As of the date of this filing, DoD has not made a substantive determination on either FOIA request and has not produced a single page of responsive records.

6.      Plaintiffs now file this lawsuit to compel DoD to satisfy its statutory duties, to obtain the requested records, and to ensure the public is informed about this important topic.

2

## PARTIES

7.      Plaintiff The Intercept Media, Inc., the publisher of *The Intercept*, is a not-for-profit, national award-winning online news outlet that publishes investigative journalism on matters of national security, civil liberties, technology, and government accountability.

8.      Plaintiff Sam Biddle is an investigative reporter for *The Intercept*.  Mr. Biddle has extensive experience covering the intersection of technology and the U.S. military, including the Department's use of artificial intelligence.[1]  He submitted the FOIA requests at issue in this case in his professional capacity as a journalist at *The Intercept*.

9.      Defendant DoD is an agency within the meaning of 5 U.S.C. § 552(f)(1).  DoD has possession and control of the records requested by Plaintiffs.

## JURISDICTION AND VENUE

10.      This action arises under FOIA. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) & (a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11.      Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B) because Plaintiff The Intercept Media, Inc.'s principal place of business is within this district.

## FACTUAL ALLEGATIONS

### The Department's Frontier AI Contracts

12.      Since taking office in January 2025, the Trump Administration has issued multiple executive orders and public statements announcing that it will prioritize adopting AI across the federal government, including the Department of Defense.

---

[1] *See, e.g.*, Sam Biddle, *OpenAI on Surveillance and Autonomous Killings: You're Going to Have to Trust Us*, THE INTERCEPT (Mar. 8, 2026), https://theintercept.com/2026/03/08/openai-anthropic-military-contract-ethics-surveillance/.

13.     In June and July 2025, CDAO awarded four Prototype Other Transaction Agreements ("OTAs"), each with a ceiling of approximately $200 million, to OpenAI, Google, Anthropic, and xAI.[2]

14.     Under the OTAs, these AI companies were to develop and scale "advanced AI capabilities" for use in warfighting, intelligence, business, and other domains.

15.     On January 9, 2026, Secretary of Defense Pete Hegseth issued a memorandum outlining the "Artificial Intelligence Strategy for the Department of War."[3]  In a paragraph titled "Clarifying 'Responsible AI' at the DoW - Out with Utopian Idealism, In with Hard-Nosed Realism," Hegseth stated that the Department must "utilize models free from usage policy constraints that may limit lawful military applications," and therefore "direct[ed] the Under Secretary of War for Acquisition and Sustainment to incorporate standard 'any lawful use' language into any DoW contract through which AI services are procured within 180 days."[4]

16.     Throughout January and February 2026, the Department negotiated with Anthropic, which has provided the Department with AI models tailored for government use and capable of operating on the Department's secured network since 2024, seeking to remove any usage policy limitations and incorporate such an "any lawful use" provision in its contracts.

---

[2] *Press Release*, Chief Digital and Artificial Intelligence Office, CDAO Announces Partnerships with Frontier AI Companies to Address National Security Mission Areas (July 14, 2025), https://www.ai.mil/latest/news-press/pr-view/article/4242822/cdao-announces-partnerships-with-frontier-ai-companies-to-address-national-secu/.

[3] The Trump Administration refers to DoD as the "Department of War" or "DoW." *Press Release*, Trump Renames DOD to Department of War (Sept. 5, 2025), https://www.war.gov/News/News-Stories/Article/article/4295826/trump-renames-dod-to-department-of-war/.

[4] U.S. Dep't of Def., *Artificial Intelligence Strategy for the Department of War* (Jan. 12, 2026), https://media.defense.gov/2026/Jan/12/2003855671/-1/-1/0/ARTIFICIAL-INTELLIGENCE-STRATEGY-FOR-THE-DEPARTMENT-OF-WAR.PDF.

4

17.     Anthropic insisted on two "red lines": that its AI models not be used for lethal autonomous warfare without human oversight or for mass domestic surveillance.[5]

18.     The parties were unable to come to an agreement, and on February 27-28, 2026, President Trump directed all federal agencies to stop using Anthropic's AI technology, and Secretary of Defense Pete Hegseth ordered the Department to designate Anthropic a supply chain risk to national security.[6]

19.     At or around the same time, the Department executed agreements with rival frontier AI companies to deploy their AI systems on Department networks.

20.     On or about February 23, 2026, xAI was reported to have entered into an agreement with the Department to deploy its Grok AI system on DoD networks.[7]

21.     The Department and xAI had previously announced two separate agreements: the July 2025 Prototype OTA and a December 2025 agreement to deploy xAI's models on DoD's AI platform GenAI.mil. Under Secretary for Research and Engineering Emil Michael, who oversees DoD's contract negotiations with AI companies, oversaw these negotiations with xAI.

22.     During the period these contracts were negotiated and announced, Michael was an investor in xAI. In January 2026, after striking these agreements, Michael sold between $5,000,000 and $25,000,000 worth of stock in xAI, turning a profit worth up to $24,000,000.[8]

---

[5] Sheera Frenkel et al., *How Talks Between Anthropic and the Defense Dept. Fell Apart*, N.Y. TIMES (Mar. 1, 2026), https://www.nytimes.com/2026/03/01/technology/anthropic-defense-dept-openai-talks.html.

[6] Amrith Ramkumar, *Trump Administration Shuns Anthropic, Embraces OpenAI in Clash Over Guardrails*, WALL ST. J. (Feb. 27, 2026), https://www.wsj.com/tech/ai/trump-will-end-government-use-of-anthropics-ai-models-ff3550d9.

[7] Dave Lawler & Maria Curl, *Musk's xAI strikes deal with Pentagon to use Grok in classified systems*, AXIOS (Feb. 23, 2026), https://www.axios.com/2026/02/23/ai-defense-department-deal-musk-xai-grok.

[8] Aram Roston, *US defense official overseeing AI reaped millions selling xAI stock after Pentagon entered agreement with company*, THE GUARDIAN (Apr. 9, 2026), https://www.theguardian.com/us-news/2026/apr/09/pentagon-ai-xai-emil-michael.

23.     On February 27, 2026, OpenAI entered into an agreement with the Department to deploy its AI systems on DoD networks.[9]

24.     In announcing the contract, OpenAI claimed that the contract protected three of its own red lines, two of which were essentially identical to the red lines that Anthropic asserted: the Department would not use OpenAI's technology for "mass domestic surveillance," to "direct autonomous weapons systems," and for "high-stakes automated decisions."[10]

25.     Indeed, OpenAI published on its website what purports to be a verbatim quotation of the passage it claimed protected these red lines:

> The Department of War may use the AI System for all lawful purposes, consistent with applicable law, operational requirements, and well-established safety and oversight protocols. The AI System will not be used to independently direct autonomous weapons in any case where law, regulation, or Department policy requires human control, nor will it be used to assume other high-stakes decisions that require approval by a human decisionmaker under the same authorities. Per DoD Directive 3000.09 (dtd 25 January 2023), any use of AI in autonomous and semi-autonomous systems must undergo rigorous verification, validation, and testing to ensure they perform as intended in realistic environments before deployment.
>
> For intelligence activities, any handling of private information will comply with the Fourth Amendment, the National Security Act of 1947 and the Foreign Intelligence and Surveillance Act of 1978, Executive Order 12333, and applicable DoD directives requiring a defined foreign intelligence purpose. The AI System shall not be used for unconstrained monitoring of U.S. persons' private information as consistent with these authorities. The system shall also not be used for domestic law-enforcement activities except as permitted by the Posse Comitatus Act and other applicable law.[11]

---

[9] OpenAI, *Our Agreement with the Department of War* (Mar. 2, 2026), https://openai.com/index/our-agreement-with-the-department-of-war/.

[10] *Id.*

[11] *Id.*

26.    OpenAI's announcement prompted public debate about whether OpenAI's agreement sufficiently protected the red lines it touted and whether OpenAI's position could satisfy the Department's "all lawful use" policy.[12]

27.    In response to this debate, OpenAI claims to have added more language to its contract with DoD, which it also announced and published on its website:

> Consistent with applicable laws, including the Fourth Amendment to the United States Constitution, National Security Act of 1947, FISA Act of 1978, the AI system shall not be intentionally used for domestic surveillance of U.S. persons and nationals.
>
> For the avoidance of doubt, the Department understands this limitation to prohibit deliberate tracking, surveillance, or monitoring of U.S. persons or nationals, including through the procurement or use of commercially acquired personal or identifiable information.[13]

### Anthropic's Lawsuit Against DoD

28.    On March 9, 2026, Anthropic sued the Department in the U.S. District Court for the Northern District of California, claiming that the government's efforts to blacklist Anthropic over its red lines amounted to retaliation for protected speech in violation of the First Amendment, denial of due process in violation of the Fifth Amendment, and arbitrary and capricious conduct in violation of the Administrative Procedure Act ("APA").

29.    That same day, Anthropic filed a similar action in the U.S. Court of Appeals for the D.C. Circuit.

30.    A total of twenty-one amicus briefs have been filed in these lawsuits to date, including briefs in support of Anthropic submitted by multiple industry trade associations,

---

[12] *See* Jessica Tillipman, *Military AI Policy by Contract: The Limits of Procurement as Governance*, LAWFARE (Mar. 10, 2026), https://www.lawfaremedia.org/article/military-ai-policy-by-contract--the-limits-of-procurement-as-governance.

[13] OpenAI, supra note 9.

twenty-two retired service secretaries and senior military officers, and thirty-seven OpenAI and Google employees.

31.    On March 26, 2026, District Court Judge Rita Lin granted Anthropic's motion for a preliminary injunction, concluding that the government retaliated against Anthropic for criticizing the government's contracting position in the press in violation of the First Amendment, federal procurement law, and the APA.

32.    On April 8, 2026, however, a special motions panel of the D.C. Circuit denied Anthropic's motion to stay its designation as a supply chain risk, writing that "weighty governmental and public interests" against "forc[ing] the United States military to prolong its dealings with an unwanted vendor" favored denial.

33.    These events have generated extensive media coverage in major outlets and prompted significant public scrutiny of the Department's approach to deploying AI in its operations, including in the ongoing conflict with Iran, where the Department has reportedly used AI to help plan attacks.[14]  Journalists have inquired into how OpenAI was able to secure contractual commitments from DoD not to use its technology for domestic mass surveillance or autonomous killing where Anthropic was not, criticizing the partial and selective disclosure of terms.[15]  Journalists have also brought attention to the risks to safety and civil liberties posed by different government uses of AI.[16]

---

[14] Dan De Luce et al., *U.S. military is using AI to help plan Iran air attacks, sources say, as lawmakers call for oversight*, NBC NEWS (Mar. 11, 2026), https://www.nbcnews.com/tech/tech-news/us-military-using-ai-help-plan-iran-air-attacks-sources-say-lawmakers-rcna262150.

[15] *See, e.g.*, Biddle, *supra* note 1.

[16] *The Intercept Briefing: Trump's AI-Powered World Wars* (Mar. 11, 2026) (featuring Nick Turse, Hooman Majd & Sam Biddle; hosted by Akela Lacy), https://theintercept.com/2026/03/11/podcast-trump-ai-world-wars/.

34.     Moreover, the terms under which frontier AI companies' technology may be used by the Department for warfighting, intelligence, business, and other types of applications pose grave legal and ethical questions.

### The FOIA Requests

35.     On March 5, 2026, Plaintiffs submitted a FOIA request (the "OTA Request") to DoD, seeking copies of each of the following four OTAs awarded by CDAO for frontier AI prototyping:

(1)     OpenAI Public Sector LLC — Prototype OTA HQ0883-25-9-0012;

(2)     Google Public Sector LLC — Prototype OTA HQ0883-25-9-0013;

(3)     Anthropic PBC — Prototype OTA HQ0883-25-9-0014; and

(4)     AIQ Phase LLC (xAI) — Prototype OTA HQ0883-25-9-0015.

36.     The OTA Request was submitted via electronic submission on the PAL Portal and was assigned handling number 26-F-1693.  A true and correct copy of the OTA Request is attached hereto as **Exhibit 1**.

37.     On March 5, 2026, Plaintiffs submitted a second FOIA request (the "Deployment Contracts Request") to DoD, seeking complete copies of any contracts between the Department and OpenAI, Google, Anthropic, or xAI, executed on or after January 1, 2024, that specifically authorize or govern the deployment of AI models on DoD networks.  The Deployment Contracts Request was assigned handling number 26-F-1701.  A true and correct copy of the Deployment Contracts Request is attached hereto as **Exhibit 2**.

38.     Both requests included requests for expedited processing on the ground that a compelling need exists for the requested information.  The Intercept and Mr. Biddle, a person primarily engaged in disseminating information, seek the requested information to inform the

public concerning actual or alleged federal government activity.  Indeed, Plaintiffs have no commercial interest in the requested records; they seek them solely for the purpose of informing the public.  Both requests also included requests for fee waivers.

### DoD's Interim Responses and Denials of Expedited Processing

39.     On March 11, 2026, DoD issued an interim response to the OTA Request by email.  The interim response stated that the Office of the Secretary of War/Joint Staff ("OSW/JS") FOIA Requester Service Center had received the request on March 6, 2026, and assigned it case number 26-F-1693.  DoD stated that it would "not be able to respond within the FOIA's 20-day statutory time period" due to "unusual circumstances."  DoD also denied expedited processing, explaining its decision only with the conclusory statement that "[a]fter carefully considering your request, this office finds that you have not clearly demonstrated how the information will lose its value if not processed on an expedited basis."  A true and correct copy of this interim response is attached hereto as **Exhibit 3**.

40.     On March 12, 2026, DoD issued an interim response to the Deployment Contracts Request by email.  The interim response stated that OSW/JS had received the request on March 6, 2026, and assigned it case number 26-F-1701.  DoD again stated that it would "not be able to respond within the FOIA's 20-day statutory time period" due to "unusual circumstances."  DoD again denied expedited processing, including the same explanation it used in its interim response to the OTA Request: "[a]fter carefully considering your request, this office finds that you have not clearly demonstrated how the information will lose its value if not processed on an expedited basis."  A true and correct copy of this interim response is attached hereto as **Exhibit 4**.

10

41.    The denials of expedited processing failed to engage with any of the specific facts, news reports, or legal authorities cited in the requests demonstrating a compelling need for expedited processing.

### The Expedited Processing Appeals

42.    On March 18, 2026, pursuant to 5 U.S.C. § 552(a)(6)(E)(ii)(II) and 32 C.F.R. § 286.11, Plaintiffs submitted administrative appeals of the denials of expedited processing for the OTA Request and the Deployment Contracts Request to the Acting Principal Deputy to the Secretary of War for Privacy, Civil Liberties, and Transparency, Michael Kremlacek.  True and correct copies of these appeals are attached hereto as **Exhibit 5** and **Exhibit 6**.

43.    On March 19, 2026, DoD acknowledged receipt of both appeals.  DoD assigned tracking number 26-A-1693-A1 to the appeal of the OTA Request and tracking number 26-A-1701-A1 to the appeal of the Deployment Contracts Request.  True and correct copies of these acknowledgment letters are attached hereto as **Exhibits 7** and **8**.

44.    In both acknowledgment letters, DoD stated that it is "unable to complete [the] appeal within the statutory time requirement" due to "an extremely heavy FOIA workload."

45.    As of the date of this filing, DoD has not made a substantive determination on either the OTA Request or the Deployment Contracts Request.  DoD has not produced a single page of records responsive to either request.  Nor has DoD made a determination on either expedited-processing appeal.

### CLAIMS FOR RELIEF

#### COUNT I
#### Wrongful Denial of Expedited Processing in Violation of FOIA
#### 5 U.S.C. § 552(a)(6)(E)

46.    Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

11

47.     Under FOIA, agencies must grant expedited processing of requests when the requester demonstrates a "compelling need."  5 U.S.C. § 552(a)(6)(E)(i)(I).  A "compelling need" exists when the information is "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity."  32 C.F.R. § 286.8(e)(1)(i)(B); *see also* 5 U.S.C. § 552(a)(6)(E)(v)(II).

48.     Plaintiffs are primarily engaged in disseminating information to inform the public about government activity.  The requested records concern how hundreds of millions of dollars of taxpayer money are being spent on novel technology and the terms under which the Department may use such technology—federal government activity of extraordinary and current public interest that has generated extensive media coverage in major national outlets.  The information is urgently needed to inform ongoing public debate.

49.     Plaintiffs request that DoD's determinations denying expedited processing be reversed, and that DoD be ordered to process Plaintiffs' requests on an expedited basis.  *See* 5 U.S.C. § 552(a)(6)(E)(iii).

### COUNT II
### Constructive Denial of FOIA Requests in Violation of FOIA
### 5 U.S.C. § 552

50.     Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

51.     FOIA provides this Court with "jurisdiction to enjoin [Defendant] from withholding agency records and to order the production of any agency records improperly withheld from [Plaintiffs]."  5 U.S.C. § 552(a)(4)(B).

52.     The records Plaintiffs seek are agency records within the Department's control.

53.     FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify a requester of, among other things, the scope of the documents that the

agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions.  *See* 5 U.S.C. § 552(a)(6)(A)(i).

54.    DoD received the OTA Request and the Deployment Contracts Request on March 6, 2026.  DoD was therefore required to make and communicate to Plaintiffs a determination on the requests by no later than April 3, 2026.

55.    In its interim responses, DoD expressly acknowledged that it "will not be able to respond within the FOIA's 20-day statutory time period."  DoD invoked "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B), but failed to respond within the extended ten working-day time frame granted by that provision.

56.    As of the date of this filing, DoD has not made and communicated to Plaintiffs a determination on either the OTA Request or the Deployment Contracts Request.  Plaintiffs are therefore deemed to have exhausted their administrative remedies.  *See* 5 U.S.C. § 552(a)(6)(C).

57.    There is no basis under FOIA to withhold the requested records.  Both requests are deliberately narrow, seeking only executed contract instruments and their attachments—discrete, readily identifiable records.  DoD has wrongfully withheld these public records in violation of FOIA.

58.    Plaintiffs request a declaratory judgment that DoD has violated FOIA and that Plaintiffs are entitled to immediately receive the requested documents.

59.    Plaintiffs further request that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an injunction directing DoD to produce all of the requested agency records in full and setting a deadline for compliance.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Declare DoD's failure to provide responsive records unlawful under FOIA;

13

B.  Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), ordering DoD to make the requested records available to Plaintiffs;

C.  Enter an injunction, pursuant to 5 U.S.C. § 552(a)(6)(E)(iii), ordering DoD to process Plaintiffs' FOIA requests on an expedited basis;

D.  Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.  Grant such other and further relief as the Court may deem just and proper.

Dated: New York, NY
        April 20, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

/s/ Lynn B. Oberlander
Lynn B. Oberlander
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 223-0200
Fax: (212) 223-1942
oberlanderl@ballardspahr.com

Maxwell S. Mishkin (*pro hac vice* forthcoming)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
mishkinm@ballardspahr.com

**LEGAL ADVOCATES FOR SAFE SCIENCE AND TECHNOLOGY, INC.**

Tyler Whitmer
Vivian Dong
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (201) 448-7739
tyler@lasst.org
vivian@lasst.org

*Counsel for Plaintiffs*

14